590 P.2d 920

**Robert W. BOTH, Petitioner,**

**v.**

**SUPERIOR COURT of Arizona, IN AND FOR the COUNTY OF MOHAVE, Gary R. Pope, a Judge thereof, and Patricia M. BOTH, Real Party in Interest, Respondents.**

**No. 14010.**

Supreme Court of Arizona,
In Banc.

Feb. 1, 1979.

Daniel J. Oehler, Bullhead City, for petitioner.

CAMERON, Chief Justice.

Petitioner in this special action seeks an order from this court directing respondent The Honorable Gary M. Pope, Judge of the Superior Court of Mohave County, to dismiss respondent Patricia M. Both's petition for modification of a foreign dissolution decree granting permanent custody of a minor child to her husband. We took jurisdiction in order to consider the recently enacted Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401 to 8–424, effective 3 September 1978.

We need answer only one question in this special action: Was the trial court's exercise of jurisdiction appropriate under the Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401, et seq.?

The facts necessary for a resolution of this matter are as follows. Robert V. Both and Patricia M. Both were married in 1971. A daughter was born to them in 1972 while they were living in New Jersey. In September 1976, the Boths separated under a written agreement which gave custody of the daughter to Robert and required Patricia to pay child support. Six months later, Robert moved from New Jersey to the State of Washington with his daughter.

The agreement provided that if a divorce was instituted the agreement was to become part of any judgment rendered therein. Some four months later, Patricia moved to Seattle and the Boths attempted to live together as a family. Five months later (in November 1977), Patricia, while Robert was at work, took the child from school and left Seattle. Robert filed for dissolution in Washington and obtained an order for temporary custody of the child on 21 December 1977. In January 1978, Robert discovered that his wife and daughter were living in Mohave County and journeyed to Arizona to obtain physical custody of his daughter pursuant to the Washington custody order. Meanwhile, Patricia filed for separation in the Superior Court of Mohave County on 5 December 1977. Robert was not served until 8 February 1978 when he was in Mohave County to obtain custody of his daughter. Patricia was served with a summons in the Washington dissolution proceedings the same day.

Robert appeared before the Arizona court; Patricia did not appear in the Washington proceedings. On 11 May 1978, the Washington court entered default judgment in favor of Robert dissolving the marriage and granting him permanent custody of the daughter under the same conditions as those contained in the New Jersey separation agreement. The Honorable Leonard Langford, Judge of the Mohave County Superior Court, dismissed Patricia's petition for separation on 21 July 1978 in an order which read as follows:

"The Court having read and considered the memorandum of counsel, finds that the marriage previously existing between the parties has been dissolved by the Superior Court of the State of Washington for King County, and that this Court is without subject matter jurisdiction to hear a Petition for Legal Separation. "Therefore, IT IS ORDERED dismissing said Petition."

That same afternoon, Robert traveled to Arizona to take custody of his daughter but again Patricia refused. Rather, she filed a petition in the Arizona court seeking modi-

fication of the Washington decree. The respondent judge granted a temporary restraining order preventing Robert from taking his daughter to Washington, the minute entry of the court reading:

"The Court finds that it has jurisdiction to proceed in this matter and that the best interests of the child require that this Court exercise jurisdiction.

"IT IS, THEREFORE, ORDERED granting Petitioner's Motion.

"FURTHER ORDERED setting this matter on Petitioner's requested Order for Modification and Why Same Should Not be Granted for hearing on *Tuesday, August 22, 1978, at 1:30 P.M.*"

Robert petitioned this court for a special action and we accepted jurisdiction.

The Uniform Child Custody Jurisdiction Act, A.R.S. §§ 8–401, et seq., was enacted by our legislature in 1978, effective 3 September 1978. § 8–401 reads in relevant part:

"§ 8–401. Purposes of act; construction of provisions

"A. The general purposes of this chapter are to:

"1. Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

"2. Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

"3. Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

\* \* \* \* \* \*

"5. Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

"6. Avoid relitigation of custody decisions of other states in this state insofar as feasible.

"7. Facilitate the enforcement of custody decrees of other states.

\* \* \* \* \* \*

"B. This chapter shall be construed to promote the general purposes stated in this section."

Although it is not clear from the record, it would appear that the respondent judge ordered the exercise of jurisdiction in this matter pursuant to A.R.S. § 8–403(A)(2). That section reads:

"A. The superior court of the state of Arizona is vested with jurisdiction to make a child custody determination by initial or modification decree if any of the following apply:

\* \* \* \* \* \*

"2. It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships."

The Commissioner's Comment to the Uniform Act reads:

"Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in Section 1 [A.R.S. § 8–401]. The paragraph was phrased in general terms in order to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. \* \* \* The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum contact with the state." Uniform Child Custody Jurisdiction Act, Commissioner's Note (U.L.A.).

■ There is no question that this statute gives the trial court jurisdiction to act when the requisite conditions exist and the best interests of the child are thereby served. This does not mean, however, that the trial court must act in every case in which it is alleged that the best interests of the child warrant the court's attention.

We had occasion to consider this problem in *McNeal v. Mahoney*, 117 Ariz. 543, 574 P.2d 31 (1977), where a father who had been awarded custody of his daughter by the Texas court in a divorce proceeding delivered the child to the child's grandparents in Pinal County, Arizona, pursuant to a stipulation in the decree providing for such temporary custody until the father established a new job and residence in Georgia. He made a subsequent demand for her return which was refused. Five months later the grandparents petitioned the Superior Court of Pinal County to be appointed the child's temporary guardians. The trial judge granted the petition the same day ex parte. We referred to subsection B of A.R.S. § 25–331, which is identical to § 8–403(B), and reads:

"* * * physical presence in this state of the child, or the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination."

And we stated:

"In our opinion, this provision evidences a legislative intent to limit or qualify the broad grant of jurisdiction under subsection (A)(2) and to preserve the existing practice of refusing to accept jurisdiction in cases where the child is brought into the state illegally or retained here wrongfully.

\*     \*     \*     \*     \*     \*

"Even though A.R.S. § 25–331(A)(2) apparently grants the courts of this state jurisdiction to hear child custody cases where the significant connection of the child to the state arises, in part, because of some form of wrongful retention, we still think our courts should refuse to hear most such cases. We agree with the Court of Appeals that a distinction must be made between *lack* of jurisdiction and *non-exercise* of jurisdiction. *Graton v. Graton*, 24 Ariz.App. 194, 537 P.2d 31 (1975). While, in light of A.R.S. § 25–331, it would be incorrect to say that Arizona courts lack jurisdiction to hear such cases, we feel that barring exceptional cases of temporary custody arising out of immediate emergency, our courts should continue to "refuse to exercise jurisdiction over child custody matters where the child's presence in Arizona at the time of the suit is the result of his being kidnapped and brought into Arizona or his being wrongfully retained here." *McNeal v. Mahoney*, supra, 117 Ariz. at 546–7, 574 P.2d at 34–5.

■ The purpose of the Act, A.R.S. § 8–401, et seq., is to promote cooperation with courts of our sister states and to deter the practice, sadly all too common, of taking the child and fleeing to another jurisdiction. Usually the best interest of the child is served by having a determination in the state where the parties both reside and where the facts concerning the custody of the child are more readily available to the court. To allow the new state in which the child has been wrongfully taken automatically to take jurisdiction, defeats the purpose of the statute and in almost all instances is contrary to the best interest of the child.

■ In the instant case, Robert had custody of the child under the New Jersey separation agreement and he instituted dissolution proceedings in Washington and brought them to fruition (including the formal grant of child custody to him) during the same period of time that the wife was instituting separation proceedings in Arizona. The wife was served in the Washington action and could have appeared in the Washington court. The child's "maximum contacts" were in the State of Washington. The child was taken from Washington and wrongfully retained in face of the Washington decree. Reliance on A.R.S. § 8–403(A)(2) to obtain modification of the Washington decree is misplaced. The court should not have exercised jurisdiction.

Relief is granted. The temporary restraining order previously issued by the respondent judge is set aside, and the matter is remanded to the trial court for such further action, consistent with this opinion, as may be proper.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.