603 P.2d 506

**In re the Marriage of Vernon C. CLARK, Appellee,**

v.

**Catherine E. CLARK, Appellant.**

No. 14455.

Supreme Court of Arizona, In Banc.

Nov. 5, 1979.

Rehearing Denied Dec. 4, 1979.

Lloyd D. Anderson, Flagstaff, for appellee.

Mark D. Winemiller, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from an order of the Superior Court of the County of Coconino which granted Vernon C. Clark's petition for dissolution of marriage and denied Catherine E. Clark's motion to set aside default and default decree. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer two questions on appeal:

1. Did the trial court have jurisdiction to grant a dissolution of marriage?

2. Did the trial court commit error in denying Catherine's motion to set aside the default and default decree?

We do not have before us the reporter's transcript of any of the hearings held by the trial court. The responsibility for including the reporter's transcript in the record is upon appellant. Rule 11(b), Rules of Civil Appellate Procedure, 17A A.R.S.[1] Since no reporter's transcript is before us, we will assume that evidence presented at any of the hearings sustained the orders rendered thereon by the court. *Walker v. Walker*, 18 Ariz.App. 113, 500 P.2d 898 (1972); *Smith v. Smith*, 115 Ariz. 299, 564 P.2d 1266 (App.1977). We will, however, consider questions of law presented by the record, *Hall v. Bowman*, 88 Ariz. 409, 357 P.2d 149 (1960), and the affidavits contained therein. *Hendrie Buick Co. v. Mack*, 88 Ariz. 248, 355 P.2d 892 (1960).

The facts as determined from the record before us and necessary for a determination of this matter on appeal are as follows. Vernon C. Clark and Catherine E. Clark were married on 14 October 1972 in Las Vegas, Nevada, and lived thereafter in Arizona until March of 1976 when they moved

---

1. These rules were effective 1 January 1978. The notice of appeal in the instant case was filed on 30 April 1978.

to Pennsylvania. In September of 1976, Vernon returned to Arizona and filed for a dissolution of his marriage. Catherine moved to dismiss for lack of jurisdiction based on insufficient domicile. The motion was granted and they reconciled and returned to Pennsylvania. In April of 1977, Vernon returned to Arizona and again filed for a dissolution of marriage. Catherine again answered alleging lack of jurisdiction based upon insufficient domicile. Non-uniform interrogatories were served on Catherine and after she failed to file answers, the court entered default and granted a decree of dissolution of marriage. Catherine moved to set aside the default and the default decree. This was denied and she appeals.

## LACK OF JURISDICTION

Catherine first contends that the court lacked jurisdiction to enter a decree of divorce because Vernon had not been domiciled in the state for 90 days prior to the filing of the petition for dissolution. She bases this on the allegation that between April of 1977 and the filing of the petition for dissolution of marriage, Vernon returned to Pennsylvania for approximately two weeks with the intention of making his domicile in Pennsylvania with Catherine. The evidence contained in the affidavits filed in support of and in opposition to the motion is in conflict. According to the affidavit of Vernon's attorney, Lloyd Anderson, Vernon came to Mr. Anderson's office on 5 April 1977 and stated that he had returned to Arizona on 1 April 1977, intended to stay, and wanted to file a petition for dissolution of marriage. Mr. Anderson told Vernon that under Arizona law he must be a resident of the state for 90 days prior to the filing of the petition for dissolution of marriage.

On 11 May 1977, Catherine signed a criminal complaint in Pennsylvania accusing Vernon Clark of theft of a Chevrolet truck valued at $7,000.

The affidavit of Vernon Clark states as follows:

"On May 19, 1977, I was at my daughter, Lucille Bray's home at 3213 N. Patterson, Flagstaff, Arizona, when a Pennsylvania Constable and Catherine Clark came to the door. I opened the door, they came inside, the Constable identified himself and showed his badge. The Constable told me I could come willingly or he would go to the Court House and get papers and I would be handcuffed and taken back to Pennsylvania. I told him I didn't want no trouble and wasn't running from anything. I said I would go back willingly, I didn't want to be handcuffed. I got in the car with them. There were two other people in the car, a Pennsylvania Deputy Sheriff and a Pennsylvania Matron (Mary something). We left for Pennsylvania at 4:30 p. m. We arrived in Greensburg, PA, Saturday, May 21, at noon. I went to Sheriff of Westmorland County. Sheriff said there was nothing he could do about the charges, it was up to District Attorney Martin. I saw District Attorney Martin at his office on Tuesday, May 24. Martin sent me to the Chief Magistrate on May 25, 1977. Magistrate said it would have to go to Court. Magistrate said it would probably be six months before the case would go to Court. Magistrate referred me to Justice of the Peace Ernest Johnson. On May 31, 1977, at 1:00 p. m., I saw Ernest Johnson. He said if I would sign a $1,000.00 bond, I would be free to go. I signed the bond and at 4:00 p. m., May 31, 1977, I caught a bus for Arizona. On June 2, 1977, I arrived in Flagstaff at 2:30 a. m."

Catherine Clark's affidavit stated:

"2. On May 19, 1977, VERNON C. CLARK, returned to Pennsylvania with me after I met him in Flagstaff, Arizona.

"3. At the time that I arrived in Flagstaff three (3) family friends were with me, including Tony DeAngeleo, who was a retired Pennsylvania Constable, but who had no connections with the law enforcement in Pennsylvania at the time.

"4. At no time were any statements made to VERNON regarding the fact that he had to come to Pennsylvania or

that he would be arrested, the other people in the car were family friends, who had no connections whatsoever with Pennsylvania law enforcement. The reason that I came to Arizona was due to a request from VERNON that he return to Pennsylvania, that I come and pick him up. VERNON did not return to Arizona until June, 1977. Since filing the Petition for Dissolution of Marriage, VERNON has stated to me on several occasions that he wishes to remain married and only filed the Dissolution action because his daughters wanted him to do it."

Vernon filed for dissolution of marriage on 7 July 1977, 97 days after he arrived in Arizona on 1 April 1977, and 93 days after he conferred with his attorney on 5 April 1977. Catherine was personally served in Pennsylvania on the 15th day of July 1977 and at the Highland Motel in Flagstaff, Arizona, on 19 July 1977. Catherine filed an answer in which she raised the question of the jurisdiction of the court based upon the alleged failure of Vernon to have been domiciled in Arizona for all of the 90 days prior to the filing of the action.[2]

We believe that the evidence was sufficient from which the court could find that the defendant maintained his domicile in Arizona for 90 days prior to the filing of the petition for dissolution of the marriage.

> "Domicile is primarily a state of mind combined with actual physical presence in the state. Either, without the other, is insufficient. One's domicile remains unchanged until a new one is acquired. Theoretically, one who goes from one state to another with the actual intention to remain and make his home in the second state, acquires a domicile in the second state immediately, * * *."

*Arizona Board of Regents v. Harper*, 108 Ariz. 223, 228, 495 P.2d 453, 458 (1972).

The trip back to Pennsylvania in May did not result in a change of his domicile in Arizona, a domicile he clearly established on 5 April. His return to Pennsylvania to take care of a pending felony charge was temporary in nature and did not indicate an intention on his part to change his domicile.

█ The record supports the court's holding that it has jurisdiction to grant the dissolution of marriage.

### DEFAULT

After the petition was filed and Catherine had responded, Catherine was served with non-uniform interrogatories pursuant to the Arizona Rules of Civil Procedure, 16 A.R.S. Catherine made some effort to answer them with the help of her attorney in Pennsylvania. On 26 September 1977, Catherine wrote to Vernon's attorney in part as follows:

> "The State Attorney here in Pennsylvania has gone over these papers and has informed me they are not mandatory. I was advised not to complete them.
>
> "At this point there is a default in information filed by you with the Courts of Arizona by way of duplication of information from last time filed for a divorce.
>
> "I also have proof on paper of purgery (sic) cover-up in court on August 27, 1977.
>
> "Your Arizona laws are not effective here in Pennsylvania. Any more legalities are to be taken up here in Pennsylvania where the roots of the problem lie. Arizona is an outsider where this situation is concerned.
>
> > Cordially,
> > /s/ Catherine E. Clark"

On 4 November 1977, Vernon asked for an order to compel discovery which was granted. Because "respondent has failed to comply with the court order of November 14, 1977, which required the respondent to respond to petitioner's various requests for discovery," default was entered 5 December

---

**2.** A.R.S. § 25–312, in effect at the time of the decree, provided that before a dissolution of marriage could be entered, the petitioner had to show that the "domicile * * * [had] been maintained for ninety days." The language of the statute has now been changed to provide that the domicile must be "maintained for ninety days prior to filing the petition for dissolution of marriage." We assume that the previous statute, though unclear, required a domicile for 90 days prior to the filing of the petition for dissolution of marriage.

1977. The decree of dissolution of marriage was entered on 30 December 1977. Catherine's Arizona attorney was present at that hearing. Catherine then moved to set aside default and default decree which was denied.

Rule 37(d), Arizona Rules of Civil Procedure, 16 A.R.S., provides:

"37(d) Failure of party to attend at own disposition or serve answers to interrogatories or respond to request for inspection. If a party * * * fails * * * (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories * * * the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule."

Rule 37(b)(2)(C) provides as sanctions:

"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;"

■ It is clear that the court had the jurisdiction and the discretion to enter the default. We find no abuse of that discretion in the record before us.

Judgment affirmed.

STRUCKMEYER, HAYS, HOLOHAN and GORDON, JJ., concur.