660 P.2d 479

In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. A–26961.

No. 1 CA–JUV 175.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 26, 1982.

Review Denied March 1, 1983.

Mark E. Turley, Phoenix, for appellant.

Cunningham, Goodson, Tiffany & Weltsch, Ltd. by Paul S. Harter, Phoenix, for appellees.

## OPINION

MEYERSON, Judge.

This appeal is from an order entered in an adoption proceeding wherein the court ruled that the natural mother's written consent to permit adoption of her two children was not the result of fraud, duress, or undue influence. The mother argues on appeal that (1) the evidence was insufficient to support the trial court's ruling and (2) under *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the burden of proof was on the adoptive parents to show by clear and convincing evidence that the consent was voluntary. However, we do not reach these issues because we raise *sua sponte,*[1] the question of whether the order is a "final" order from which an appeal may be taken.

On April 22, 1981, because of financial and personal problems, appellant left her seven-year-old son and one-year-old daughter with Mr. and Mrs. Kenneth Page. The Pages would frequently babysit for the children. During April and May, appellant and Mr. and Mrs. Page talked frequently about the possibility that the Pages might adopt the children. Appellant ultimately agreed to the adoption and on July 2, 1981, Mrs. Page took appellant to Mrs. Page's attorney where appellant signed a document entitled "Consent of Parent to Adoption of Minor Children." The record reflects that this consent form complied with the formalities of A.R.S. § 8–107.

Because the adoptive parents had not yet been certified for adoption as required by A.R.S. § 8–109, they petitioned for temporary custody pursuant to A.R.S. § 8–108. On September 2, 1981, temporary custody of the children was granted to Mr. and Mrs. Page. During this entire period, the children remained with the adoptive parents.

On November 16, 1981, appellant filed a petition for writ of *habeas corpus* asserting that her consent was obtained under duress, mistake, fraud, and undue influence and was therefore void. However, the writ was not issued because the trial court found that the petition was in substance a request for a hearing to determine the validity of consent.[2] The hearing held on January 20, 1982, was limited solely to the issue of validity of consent. At the conclusion of the hearing, the court found that the consent was not the result of fraud, duress, or undue influence and it was signed knowingly, intelligently, and voluntarily. The court's order went on to dismiss the petition and this appeal followed.

Ordinarily when this court finds that it lacks jurisdiction, the appeal is dismissed in an unpublished order. Because of the importance of the jurisdictional question involved, however, we have rendered this decision by opinion. *Matter of the Appeal in Maricopa County Juvenile Actions Nos. J–86384 and JS–2605,* 122 Ariz. 238, 594 P.2d 104 (Ct.App.1979).

1. The parties were permitted to file, and did file, supplemental briefs on the issue of jurisdiction.

2. The trial court's minute entry of November 16, 1981, states:

The natural mother has filed a "Petition for Writ of Habeas Corpus and Affidavit" which in reality is a request for a hearing to determine whether the consent previously signed by her was signed because of duress, mistake, fraud, or undue influence. The pleading does not state any grounds sufficient upon which a Writ of Habeas Corpus might be entered.

IT IS ORDERED the Writ of Habeas Corpus will not be issued.

IT IS ORDERED setting for hearing on the question of whether the natural mother can show the consent which she signed was signed because of duress, mistake, fraud, or undue influence . . . .

IT IS ORDERED that the natural mother, Patricia Nestor, will have the burden of proof in that aforesaid hearing.

■ *Habeas corpus* procedures are technically civil in nature and are most often used to test the legality and correctness of a prisoner's detention. *See* A.R.S. §§ 13-4121—47; *Powell v. State,* 19 Ariz.App. 377, 507 P.2d 989 (1973). The writ may also be used as a procedural device to bring the issue of lawful custody of a minor child before a court or to invoke the court's equity powers to determine custody in light of the best interests and the welfare of the child. *Smart v. Cantor,* 117 Ariz. 539, 574 P.2d 27 (1977); *Arizona State Dep't of Public Welfare v. Barlow,* 80 Ariz. 249, 296 P.2d 298 (1956).

■ As reflected in the trial court's minute entry order of November 16, 1981, however, the issue presented by the petition was not whether the adoptive parents had lawful custody nor whether the trial court had correctly determined that granting them temporary custody would be in the children's best interest. Rather, the issue was whether the consent to adopt was valid and could form the basis for the statutory requirement of consent to final adoption and the resulting termination of parental rights as outlined in A.R.S. §§ 8-106—117.[3] Thus, the trial court's order of January 20, 1982, cannot be considered a final order in a *habeas corpus* proceeding but must be viewed solely as an order determining whether parental consent had been given in an adoption proceeding.

The procedure applicable to appeals in adoption matters is laced with a confusing history. Prior to 1979, appeals could be taken from interlocutory orders in adoption cases. A.R.S. § 8-122 (repealed effective 1979). This statute, which also provided that appeals were to be governed by the rules of civil procedure, conflicted with the Rules of Procedure for the Juvenile Court.

The supreme court resolved the conflict holding that adoption matters were not intended to be included within the juvenile court rules. *In re Appeal in Pima County, Adoption of B–6355 and H–533,* 118 Ariz. 111, 575 P.2d 310 (1978).

Shortly thereafter, the legislature repealed A.R.S. § 8-122 and enacted A.R.S. § 8-236 which provides:

A. Any aggrieved party in any proceeding under this title may appeal from a *final order* of the juvenile court to the court of appeals in the manner provided in rules of procedure for the juvenile court as promulgated or approved by the Arizona supreme court . . . .

(emphasis added). Because of the supreme court's constitutional power to make rules governing all procedural matters, Ariz. Const. art. 6, § 5, the validity of the legislature's attempt to make the juvenile court rules applicable to adoption cases was questioned. That doubt was resolved in *State v. Garza,* 128 Ariz. 8, 623 P.2d 367 (1981), when this court upheld the authority of the legislature to adopt procedural rules absent rules promulgated by the supreme court. Several months later, the supreme court amended the juvenile court rules to provide that the "rules govern the procedure for all matters in the juvenile court, including . . . adoption . . . ." Rule 1, Rules of Procedure for the Juvenile Court (effective April 15, 1981).

Thus, by virtue of A.R.S. § 8-236 an appeal may be taken only from a final order. Additionally, Rule 24(a), Rules of Procedure for the Juvenile Court, specifically requires that appeals be taken from a "final order" of the juvenile court. "A final order is one which ends the proceedings, leaving no question open for further judicial action." *Matter of the Appeal in Pima County Juve-*

---

**3.** The pre-trial statement filed January 20, 1982, and signed by both the attorney for the natural mother and the attorney for the adoptive parents confirms that the sole issue to be determined was whether the consent for adoption was executed under duress, mistake, undue influence, or fraud and contains the following agreement:

The parties further agree that as to this petition, that if the Court determines that the Consent is valid, then petitioner's parental rights may be terminated on that basis alone. However, if the Consent is determined to be invalid, then the issue of the best interests of the minor children, and their care and custody, would remain an issue for the Court to determine at a later date.

*nile Action No. S–933, No. 15953–PR,* slip op. at 5 (Ariz.Sup.Ct. Oct. 13, 1982).

If the court finds that the requirements for adoption have been met and that the adoption is in the best interests of the child, the court then enters its order granting the adoption. A.R.S. § 8–116. "Such order shall be conclusive and binding on all persons from the date of entry subject to appeal . . . ." *Id.* It is not until the entry of the decree of adoption that the rights of the natural parent are "completely severed." A.R.S. § 8–117.B.; *Anguis v. Superior Court,* 6 Ariz.App. 68, 73, 429 P.2d 702, 707 (1967). Thus, the "final order" in an adoption proceeding does not take place until the court enters its order pursuant to A.R.S. § 8–116.[4]

In reaching our conclusion that the consent determination is not an appealable order, we recognize that the effect of such a holding will be to impact upon the fundamental and important interests of the natural parent. *Santosky v. Kramer.* By holding that an order relating to the issue of consent cannot be appealed until the entry of the final decree of adoption, we make the natural parents' care and custody rights more attenuated and decrease the likelihood that the child's relationship with the natural parents might be restored. *See In re Holman's Adoption,* 80 Ariz. 201, 295 P.2d 372 (1956); *Anonymous v. Anonymous,* 23 Ariz.App. 50, 530 P.2d 896 (1975). Despite our reservations, that result is compelled by the clear import of A.R.S. § 8–236.

In this case, as mentioned earlier, the limited issue to be decided was whether the consent was voluntary. The adoptive parents had not been certified for adoption and the issue of whether it was in the best interest of the children to permit the Pages to adopt or to return the children to the natural mother was yet to be decided. Thus, we conclude that there was no "final order" within the meaning of A.R.S. § 8–

236 or Rule 24, Rules of Procedure for the Juvenile Court.

The appeal is dismissed for lack of jurisdiction.

HAIRE, P.J., and EUBANK, J., concur.

---

4. The parties' stipulation that appellant's rights could be terminated upon a finding that the consent was valid does not affect our conclusion. "[C]onsent is a jurisdictional prerequisite to a valid adoption." *In re Adoption of Luke,* 3 Ariz.App. 327, 329, 414 P.2d 176, 178 (1966). In an adoption proceeding, the natural parents' rights are not legally severed until entry of the adoption decree; thus, the parties' stipulation could have no binding force or effect.