48 P.3d 512

ARIZONA DEPARTMENT OF
ECONOMIC SECURITY,
Petitioner,

v.

Hon. Deborah BERNINI, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent,

and

Candle H. and Michael J., Real Parties in Interest.

No. 2 CA–SA 2002–0040.

Court of Appeals of Arizona,
Division 2, Department A.

June 6, 2002.

Redesignated as Opinion June 25, 2002.

Janet Napolitano, Arizona Attorney General, by Michelle R. Nimmo, Tucson, for Petitioner.

Suzanne Laursen, Tucson, for Real Party in Interest Candle H.

Gilmore & Turner, P.L.L.C., by Leslie S. Turner, Tucson, for Real Party in Interest Michael J.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 In this special action, the Arizona Department of Economic Security (ADES) challenges the respondent judge's application of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 through 1963, at a preliminary protective hearing held pursuant to A.R.S. § 8–824 and review of taking a child into temporary custody pursuant to A.R.S. § 8–821. Because the respondent judge applied ICWA, she required ADES to establish by clear and convincing evidence[1] rather than a preponderance that the continued removal of Noah J. from the custody of his parents, real parties in interest Candle H. and Michael J., was "clearly necessary to protect the child from suffering abuse or neglect." § 8–821(A). *See also* § 8–824(F). Finding that ADES had not sustained that burden, the respondent judge ordered ADES to return two-week-old Noah, who had been placed in foster care, to his mother within one week. After the judge refused to extend the time for returning Noah to Candle until such time as the ICWA issues set forth in ADES's motion for reconsideration could be

---

1. Rule 8, Ariz.R.P.Juv.Ct., 17B A.R.S., expressly incorporates the provisions of ICWA, including

its burdens of proof.

fully briefed, we granted ADES's request for an interlocutory stay of the respondent judge's order. The parties having had an opportunity to brief the issues ADES has raised, we now address the merits of its challenge to the respondent judge's order.

¶ 2 We accept jurisdiction of the special action because ADES has no equally plain, speedy, or adequate remedy by appeal. Ariz.R.P. Special Actions 1, 17B A.R.S. *Cf. Rita J. v. Arizona Dep't of Econ. Sec.*, 196 Ariz. 512, 1 P.3d 155 (App.2000) (order entered after permanency planning hearing not final or appealable and, even if appealable, remedy not equally plain, speedy, or adequate; issue more appropriately reviewed by special action). The respondent judge's order is interlocutory in nature, providing for Noah's temporary placement awaiting the outcome of the pending dependency proceeding. And, the order will govern the course of the underlying proceedings because of the determination that ICWA applies. Additionally, whether the respondent judge erred by applying ICWA is a question of law. *See Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, ¶ 7, 7 P.3d 960, ¶ 7 (App.2000) (appellate court reviews de novo "the interpretation and application of [ICWA]"). That a special action raises pure questions of law is an additional basis for accepting jurisdiction. *See Arizona Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 22 P.3d 513 (App.2001). Because we conclude the respondent judge abused her discretion, having erred as a matter of law, we grant special action relief. *See* Ariz. R.P. Special Actions 3(c).

¶ 3 In August 2001, Noah's siblings, ages three and one, were taken into temporary custody by Child Protective Services (CPS) after Candle attempted to commit suicide by taking an overdose of medication for depression and anxiety. She also tested positive for cocaine. Police discovered the children were bruised, and Candle reported that Michael had beaten them. One of the children previously had been diagnosed as having failed to thrive. In October, the children were adjudicated dependent after the parents admitted the allegations in an amended dependency petition. They have remained out of their parents' custody, though the family has been receiving a variety of services pursuant to a case plan for reunification. Michael was evaluated by James Stewart, Ph.D., who opined that Michael suffers from an antisocial personality disorder with "significant psychopathy," adding that his prognosis is "not good" and that his psychopathy is likely to worsen over time. Additionally, Dr. Stewart stated that Michael poses a risk to himself and others and that he should not, under any circumstances, be permitted to have unsupervised visits with his children, his risk for future violence being high.

¶ 4 Noah was born in April 2002. A CPS caseworker visited Candle in the hospital to determine whether, given the family's history, Noah would be at risk if left in his parents' custody. Candle told the caseworker that she was not concerned about Michael's ability to care for children and that she would leave her children alone with him if they were to be returned to her custody. CPS removed Noah from the parents' custody when he was released from the hospital.

¶ 5 At a preliminary protective hearing on April 16, 2002, the respondent judge reviewed ADES's temporary custody of Noah, at Michael's request. *See* § 8–824; Ariz. R.P.Juv.Ct. 51, 17B A.R.S. The caseworker testified that returning Noah to Candle would subject him to a risk of serious emotional or physical harm. She stated she was troubled by Candle's lack of concern about the risk Michael posed to the children. Her report and that of Dr. Stewart were admitted into evidence. During the hearing, both Michael and the respondent judge raised the possibility that ICWA applied because Noah could be an Indian child as that term is defined by Arizona law and ICWA.

¶ 6 The applicability of ICWA had been raised in the proceedings relating to Noah's siblings, but no determination had been made that it applied. At the preliminary protective hearing in August 2001 regarding those children, for example, another judge had asked whether any party had reason to believe that either child was subject to ICWA; it had been suggested that they could be of Chippewa, Cherokee, and/or Iroquois descent. The judge had ordered ADES to obtain verification of the children's status

before the initial dependency hearing scheduled for October. ADES sent affidavits of notice to the Turtle Mountain Band of Chippewa, the Bureau of Indian Affairs (BIA), and the Cherokee Nation of Oklahoma in accordance with 25 U.S.C. § 1912(a). At the October hearing, however, ADES told the judge that the Chippewa tribe had not responded, that the Cherokee tribe had asked for more information, and that the Iroquois tribe had not been served because it was not "federally recognized" under 25 U.S.C. § 1903(8).

¶ 7 At Noah's preliminary protective hearing in April 2002, counsel for ADES stated she had learned the previous day "that the grandmother was a member of the Oneida tribe." She also stated that Candle's mother was enrolled in the Chippewa tribe. Michael argued that Noah was eligible for enrollment in an Indian tribe and, therefore, that ICWA applied because Noah had maternal and paternal relatives who were enrolled in two different tribes. Michael argued that ICWA required ADES to establish by clear and convincing evidence that Noah was likely to suffer serious emotional or physical harm if he were returned to his parents. *See* § 8–824 (setting forth general provisions on preliminary protective hearings); Ariz.R.P.Juv. Ct. 50(C)(6) (providing that, if ICWA applies, court must enter findings after preliminary protective hearing "pursuant to the standards and burdens of proof as required by the Act"); Ariz.R.P.Juv.Ct. 51(B), (D) (if applicable, burden of proof under ICWA for temporary custody review is clear and convincing evidence); *see also* 25 U.S.C. § 1912(e) (foster care placement of Indian child must be supported by clear and convincing evidence "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child").

¶ 8 Finding that there was "reason to believe that ... Noah is subject to" ICWA and that ADES had not sustained its burden of proving that Noah's continued removal from the custody of his parents was warranted under ICWA, the respondent judge ordered Noah returned to them. The judge added, "I probably would have gone the other way" if state law applied, but ADES simply "didn't have what it needed" under ICWA. This special action followed.

¶ 9 ADES contends there was insufficient evidence to support the respondent judge's finding that ICWA is applicable. Candle essentially does not dispute that the evidence was insufficient to establish that ICWA applies here; rather, she challenges the sufficiency of the evidence to support Noah's continued removal from his parents even under the lesser burden of a preponderance of the evidence. Michael, on the other hand, insists that the respondent judge correctly found ICWA applicable and that ADES did not sustain the higher burden of proof.

■ ¶ 10 Rule 50(B)(1) provides that, at a preliminary protective hearing, the juvenile court must "[i]nquire if any party has reason to believe that the child at issue is subject to [ICWA]." Rule 50(C)(3) states that, if the court has reason to believe the child is an Indian child, it must "[o]rder the petitioner to obtain verification of the child's Indian status from the child's Indian tribe or from the United States Department of Interior, Bureau of Indian Affairs." The rule is consistent with 25 U.S.C. § 1912(a), which provides that, in any involuntary child custody proceeding in which

the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe ... of the pending proceedings and of their right of intervention.

ADES concedes that the notice provision of § 1912(a) had been invoked. And ADES does not challenge the respondent judge's inquiry into the application of ICWA. But ADES insists that the mere fact that a court has reason to believe ICWA could apply, requiring further inquiry into the question and compliance with the notice requirements of the rule and § 1912(a), does not mean ICWA applies in the interim. We agree.

■ ¶ 11 "The 'reason to know' standard of § 1912(a) applies only to notice." *In re Adoption of a Child of Indian Heritage*, 111

N.J. 155, 543 A.2d 925, 942 (1988). ICWA only applies if a proceeding is a child custody proceeding and if the child involved is an Indian child. *In re Maricopa County Juvenile Action No. JS–8287,* 171 Ariz. 104, 828 P.2d 1245 (App.1991). *See also* 25 U.S.C. § 1903(1) and (4) (defining child custody proceeding and Indian child). For purposes of this special action, we assume that a preliminary protective hearing and temporary custody review is a "child custody proceeding" within the meaning of ICWA. ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). The same definition is set forth in Rule 37(C)(2), Ariz. R.P.Juv.Ct. The evidence before the respondent judge did not establish that Noah is an Indian child under that definition.

¶ 12 At the time of the preliminary protective hearing involving Noah, there had been no determination that his full siblings were Indian children in the proceedings involving them, which had been pending for about eight months. Noah is not a registered member of a tribe, and no evidence was presented that either parent is a member of a tribe; consequently, based on the evidence presented at the preliminary protective hearing, Noah is not the biological child of a member of a tribe. That the paternal great-grandmother and the maternal grandmother might be enrolled in Indian tribes might have been sufficient to trigger the notice provision of § 1912, placing the burden on ADES to inquire farther into the matter. ADES complied with the notice provision, and no information affirmatively establishing that Noah is an Indian child resulted from the notice. Under these circumstances, the burden shifted to the parents to show that ICWA applied. *See In re J.T.,* 166 Vt. 173, 693 A.2d 283, 288 (1997) (father's statement to psychologist that his father was "full-blooded Mohican" sufficient to trigger obligation of trial court to inquire about child's Indian status by giving notice to tribe but lack of response or negative response shifted burden to father to establish ICWA's applicability). *See also In re J.L.M.,* 234 Neb. 381, 451

N.W.2d 377 (1990) (party to proceeding who seeks to invoke ICWA has burden to show it applies).

¶ 13 The BIA Guidelines for State Courts; Indian Child Custody Proceedings (BIA Guidelines) are instructive in this regard. The BIA Guidelines provide that a tribe's determination "that a child is or is not a member ..., is or is not eligible for membership ..., or that the biological parent is or is not a member of that tribe is conclusive." BIA Guidelines B.1(b)(i). But, absent such verification by the tribe itself, other factors "shall trigger an inquiry by the court [and ADES] to determine whether a child is an Indian for purposes of [ICWA]." Commentary to BIA Guidelines B.1. Those factors include a party's notification that the child is an Indian child, information presented by a state agency suggesting the possibility that a child is an Indian child, a suggestion by the child to the court that "gives [it] reason to believe he or she is an Indian child," the residence of the child or the child's parents, or information provided by "[a]n officer of the court involved in the proceeding." BIA Guidelines B.1(c)(i) through (c)(v). Without more, such factors do not generally, nor did they here, establish that a child is a member of a tribe or eligible for membership and a biological child of a member. 25 U.S.C. § 1903(4); Ariz.R.P.Juv.Ct. 37(C)(2).

¶ 14 As ADES stated in its petition for special action, because of his relatives' membership, "Noah *conceivably could be* (now or at some future time) eligible for membership in or a member of one or more tribes and ... such evidence may someday come before the juvenile court." But more specific information was required than that which was before the respondent judge when she implicitly found that Noah is an Indian child by applying the elevated burden of proof pursuant to ICWA. *See Michael J.* (written confirmation by tribe of father's enrollment as a member and child's eligibility for enrollment sufficient evidence to support finding that child was Indian child for purposes of ICWA).

¶ 15 Although a determination on whether the circumstances of a given case require that a child remain in temporary custody is

generally a fact-based decision for a juvenile court judge to make in the exercise of his or her discretion, we need not remand this matter to the respondent judge to decide the issue under the correct burden of proof, a preponderance of the evidence. Based on the respondent judge's comments on how she "probably" would have ruled had that been ADES's burden and given the evidence presented below, which is before us, we conclude as a matter of law that ADES established by a preponderance of the evidence that Noah's continued removal from his parents' custody pending the initial dependency hearing was "clearly necessary" to protect him because he was either at that time "[s]uffering or [would] imminently suffer abuse or neglect ... [or] serious physical or emotional damage." § 8–821. Consequently, we grant special action relief, vacate the respondent judge's order of April 16, 2002, returning Noah to his mother, and remand this matter to the respondent judge, who is directed to enter orders consistent with this decision. It is further ordered vacating the stay issued by this court on April 24, 2002.

Judge FLÓREZ and Judge PELANDER concurring.