209 P.3d 157

**JARED P., Appellant,**

v.

**GLADE T. and Tandy T., Baby Girl J., Appellees.**

**No. 1 CA–JV 08–0083.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 24, 2009.

Review Denied June 1, 2009.

Law Office of Kathleen M. Mucerino by Kathleen M. Mucerino, Sun City, Attorney for Appellant.

Schmitt, Schneck, Smyth & Herrod, PC by Michael J. Herrod, Phoenix, Attorneys for Appellees.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to determine whether a putative father, who is an Indian, can challenge the adoption of his daughter even though he did not comply with Arizona Revised Statutes ("A.R.S.") section 8–106(G) (2007). Because we find that the juvenile court erroneously concluded that the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1901 to 1963 (2000), was not applicable, we vacate the court's rulings and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In Potter County, Texas, two teenagers, S.J.[1] ("Mother") and Jared P. ("Jared"), conceived a child. During the pregnancy, Mother decided to place the child for adoption. The adoption agency she selected served Jared with a petition to terminate his parental rights. He objected, and the petition was dismissed when the agency did not pursue the termination.

¶ 3 In mid-August 2006, Jared learned that Mother had gone into early labor. He went to the hospital but Mother refused to allow him into her room and had him escorted out of the hospital. J. was born a week later on August 24, 2006. Mother did not notify Jared that his child was born nor did she put his name on the birth certificate. Instead, she took the newborn and moved to Arizona.

¶ 4 Jared learned of the birth the following week. He filed a petition on September 19, 2006, to adjudicate parentage in Ochiltree County, Texas. Mother, meanwhile, had

---

1. To protect the anonymity of the people involved in this matter, we are not using their complete names. *See, e.g., J.D.S. v. Franks,* 182 Ariz. 81, 84 n. 1, 893 P.2d 732, 735 n. 1 (1995).

asked her cousins, Glade and Tandy T. ("adoptive parents") to adopt the baby. They agreed, and served Jared with a notice to potential fathers pursuant to A.R.S. § 8–106(G) on the same day he filed his paternity action. He amended his petition on October 5, 2006, and requested genetic testing and custody. Mother, while temporarily in Texas, was served with the amended petition on October 31, 2006.

¶ 5 Before she was served, Mother signed a consent to allow her cousins to adopt J. The future adoptive parents filed a petition for temporary custody in the Maricopa County Juvenile Court on October 27, 2006.

¶ 6 The juvenile court exercised emergency temporary jurisdiction over the child and conducted a hearing on the adoptive parents' temporary custody petition on November 8, 2006. The juvenile court recognized that there was a pending custody petition in Texas, and the court subsequently indicated that it would contact the Texas court to determine which court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). A.R.S. §§ 25–1001 to –1067 (2007 and Supp.2008)

¶ 7 The Texas and Arizona judges conferred in January 2007, and agreed that Arizona would exercise jurisdiction. The Texas court subsequently dismissed Jared's paternity petition. Our juvenile court affirmed its UCCJEA jurisdiction on January 25, 2007. The court also affirmed the temporary custody order, but noted that the father needed to consent to the adoption or his parental rights needed to be terminated before the adoption could be finalized.

¶ 8 After the petition for adoption was filed, Jared objected to the adoption in a letter to the juvenile court and expressed his desire to assert his parental rights. The court held a hearing on March 28, 2007, and rescheduled it because Jared had not been given notice of the hearing. The court, however, called the lawyer for the Texas adoption agency and learned that the agency had allowed its petition to be dismissed after Jared objected to the termination action.

¶ 9 At the rescheduled hearing on April 30, 2007, the court ordered a DNA test to determine whether Jared was the biological father, and reset the hearing on Jared's objection. Jared and the child were tested in June 2007 and the results confirmed Jared's paternity.

¶ 10 Jared, meanwhile, registered as a member of the Cherokee Nation ("Nation"). The Nation subsequently named J. as an Indian child, and notified the juvenile court of its intent to intervene. Mother, as a result, signed a consent to adopt form to comply with ICWA. Jared responded and requested a severance hearing.

¶ 11 After the court allowed the Nation to intervene, the Nation argued that ICWA should govern the proceedings, that Jared had established his paternity within the Act, and, as a result, that his parental rights warranted a higher level of protection. The court rejected the arguments, and the Nation approved of J.'s placement with the future adoptive parents.

¶ 12 The juvenile court held an evidentiary hearing on January 7, 2008, on Jared's objections to the adoption. The court then set a hearing to determine whether the child was free for adoption. In a comprehensive order that was filed on January 25, 2008, the court ruled that the child was free for adoption. The court found that Jared had not complied with the requirements of A.R.S. § 8–106, and, as a result, could not impede the adoption. The court also found that because Jared had not timely or "legally acknowledge[d] his paternity or establish[ed] his paternity," ICWA was inapplicable. Jared did not appeal that order. He filed a timely appeal, however, after the adoption was finalized on May 13, 2008.

## DISCUSSION

¶ 13 The adoptive parents contend that Jared lacks standing to appeal the adoption. Specifically, they argue that: because he did not timely file an appeal after the juvenile court's January 7th order he had not preserved his rights; as a result, his consent to the adoption was unnecessary pursuant to A.R.S. § 8–106; therefore, he cannot appeal after the adoption. We independently review whether we have jurisdiction.

¶ 14 Generally, any aggrieved party can file an appeal from the final order of the juvenile court. A.R.S. § 8–235(A) (2007); Ariz. R.P. Juv. Ct. 103(A). If the order is not a final order, the appeal is premature. *See Maricopa County Juvenile Action No. A–26961*, 135 Ariz. 228, 230–31, 660 P.2d 479, 481–82 (App.1982). If the appeal is not timely filed pursuant to Arizona Rules of Procedure for the Juvenile Court 88 and 89, we do not have jurisdiction. *See State v. Garza*, 128 Ariz. 8, 10, 623 P.2d 367, 369 (App.1981) (dismissing appeal as untimely because mother filed it more than fifteen days after the issuance of the minute entry terminating her parental rights). Consequently, we examine whether Jared's appeal is timely.

### I

¶ 15 Generally, before an adoption is finalized any putative father must be served with a notice of the adoption proceeding. The putative father must then take affirmative steps to establish paternity if he wishes to preserve his parental rights. A.R.S. § 8–106(G); *Pima County Juvenile Severance Action No. S–114487*, 179 Ariz. 86, 93–94, 876 P.2d 1121, 1128–29 (1994) (citing *Caban v. Mohammed*, 441 U.S. 380, 392, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979)) (recognizing a father's parental rights do not attain fundamental constitutional status unless significant steps to create a parental relationship are taken). Specifically, the putative father must "initiate paternity proceedings under title 25," "serve the mother within thirty days of completion of service," and "proceed to judgment in the paternity action." A.R.S. § 8–106(G)(3), (4). If the putative father fails to timely take and complete any step, he is statutorily barred from "bringing or maintaining any action to assert any interest in the child." A.R.S. § 8–106(G)(7).

¶ 16 Here, Jared filed a paternity action in Texas and, on the same day, September 19, 2006, was served the potential father notice. He amended his paternity petition on October 5, 2006, but did not serve Mother until October 31, 2006, which was more than thirty days after he was served with the potential father notice. Because Jared's actions did not comply with A.R.S. § 8–106(G), and he was not excused from compliance with the statute, the juvenile court would typically find he waived his right to further notification of any adoption hearing, and the adoptive parents would not need to secure his consent in order to proceed with the adoption. *See* A.R.S. § 8–106(J).

### II

¶ 17 This case, however, requires us to examine the impact of ICWA's procedural protections because the Cherokee Nation notified the juvenile court that J. was an Indian child before the court formally found that Jared had not timely served Mother with his paternity petition pursuant to A.R.S. § 8–106 or finalized the adoption. We review the court's application of the federal statute de novo. *See Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570, ¶ 14, 190 P.3d 180, 184 (2008) (citing *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9, 88 P.3d 159, 161 (2004)); *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 156, ¶ 7, 7 P.3d 960, 962 (App.2000) (citing *Columbia Parcar Corp. v. Ariz. Dep't of Transp.*, 193 Ariz. 181, 183, ¶ 11, 971 P.2d 1042, 1044 (App.1999)).

¶ 18 ICWA imposes requirements on state courts when an Indian child is the subject of a child custody proceeding. *Steven H.*, 218 Ariz. at 568, ¶ 1, 190 P.3d at 182. A child custody proceeding includes preadoptive and adoptive placement of an Indian child, as well as termination of an Indian parent's parental rights. 25 U.S.C. § 1903(1); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 42, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Maricopa County Juvenile Action No. A–25525*, 136 Ariz. 528, 531 n. 2, 667 P.2d 228, 231 n. 2 (App.1983). ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Enrollment is not a necessary condition of tribal membership, although membership may be established through proof of enrollment. *Dwayne P. v. Superior Court*, 103 Cal.App.4th 247, 126 Cal.Rptr.2d

639, 646 (2002); *Nelson v. Hunter*, 132 Or. App. 361, 888 P.2d 124, 125 (1995). Each tribe, however, determines its membership, and its determination that a person is a member of the tribe is conclusive. *Ariz. Dep't of Econ. Sec. v. Bernini*, 202 Ariz. 562, 565, ¶ 13, 48 P.3d 512, 515 (App.2002) ("[ A] tribe's determination that a child is or is not a member . . . , is or is not eligible for membership . . . , or that the biological parent is or is not a member of that tribe is conclusive." (quoting Bureau of Indian Affairs Guidelines for State Court; Indian Child Custody Proceedings B.1(b)(i), 44 Fed.Reg. 67586 (Nov. 26, 1979))).

¶ 19 An "unwed father" is generally not a "parent" unless paternity has been "acknowledged or established." 25 U.S.C. § 1903(9); *Juvenile Action No. A–25525*, 136 Ariz. at 532–33, 667 P.2d at 232–33. ICWA does not, however, define how paternity can be acknowledged or otherwise detail any procedure to establish paternity. Consequently, we look to state law to determine whether paternity has been acknowledged or established.

¶ 20 The Arizona Legislature has provided a process for unwed fathers to establish or acknowledge paternity. A.R.S. §§ 25–806, – 812 (Supp.2008). The process to establish paternity requires a petition to be filed and provides that the other party may contest the petition, admit paternity, or default. A.R.S. § 25–806(A), (D) & (E). The less formal method of acknowledgment can occur if both parents, in one or more notarized or witnessed documents, agree they are the parents of the child and file the statement or documents with the clerk of the court or other statutory entities. A.R.S. § 25– 812(A)(1). In the alternative, the parties can agree to be bound by the results of genetic testing. A.R.S. § 25–812(A)(2). Either method of acknowledgment can result in an order or judgment of paternity. A.R.S. § 25–812(C).

¶ 21 Additionally, we have recognized that a parent can "acknowledge" paternity under ICWA by admission and genetic testing. In *Michael J.*, a member of the Tohono O'odham Nation filed a successful lawsuit to transfer a dependency proceeding involving an Indian child to tribal court. 198 Ariz. at 155, ¶¶ 1–3, 7 P.3d at 961. The guardian ad litem appealed and challenged ICWA's application because the father had not "established legal paternity." *Id.* at ¶ 11, 7 P.3d 960. We upheld the transfer even though the putative father had not filed a paternity action because he acknowledged paternity, which was later confirmed by DNA testing, to the juvenile court. *Id.* at ¶ 12, 7 P.3d 960. Moreover, the father's tribe provided written confirmation that he was enrolled in the tribe and the child was eligible for membership. *Id.* We found that his acts were sufficient acknowledgement, even though a formal paternity petition had not been filed, and, as a result, ICWA applied. *Id.* ("The Act merely requires a putative Indian father to acknowledge or establish paternity . . . [and][t]he record contains ample evidence to support the trial court's finding [that father is a 'parent']").

¶ 22 While the father in *Michael J.* timely "acknowledged" his paternity, the putative father in *Juvenile Action No. A–25525* did not. 136 Ariz. at 532, 667 P.2d at 232. There, despite repeated notices, the putative father, a Pima Indian, did not acknowledge that he was the child's father until the child was three years old, and thirty-one months after the adoption. *Id.* Although he was notified of the termination proceedings and needed only to acknowledge that he was the father, he remained silent. *Id.* ICWA requires "more than mere speculation of paternity" and the father's acknowledgment some thirty-one months after the adoption was too late to invoke the Act. *Id.* at 532–33, 667 P.2d at 232–33. Thus, we held that a finding that a child is an Indian child does not relate back to the child's birth, and, as a result, ICWA does not apply to earlier proceedings. *Id.; see also Bernini*, 202 Ariz. at 565, ¶ 12, 48 P.3d at 515 (recognizing that ICWA's higher burden of proof did not apply until parent proved child was an Indian child, even though ICWA's notice provisions had been invoked).

¶ 23 Once a court has notice that the child is an Indian child, subsequent proceedings may be invalidated if the court thereafter fails to comply with ICWA. *See* 25 U.S.C.

§ 1914. Our determination that ICWA is prospective from the time it is discovered that an Indian child is involved and not retroactive to the child's birth is shared by other jurisdictions. *See People in Interest of A.E.*, 749 P.2d 450, 451 (Colo.Ct.App.1987) (citing *Juvenile Action No. A–25525*, 136 Ariz. at 533, 667 P.2d at 233 (App.1983)) (holding ICWA is not applicable until the child meets the criteria for "Indian child"); *In re Adoption of a Child of Indian Heritage*, 111 N.J. 155, 543 A.2d 925 (N.J.1988) (upholding adoption because court did not have notice that child was an Indian child and father did not acknowledge paternity until after the adoption was finalized).

¶ 24 Here, the record reflects that Jared acknowledged paternity. He challenged the adoption agency's petition seeking to terminate his parental rights before the child was born. He attempted to be present for the child's birth. He filed a paternity petition in Texas, and amended it after getting notice that the adoptive parents intended to adopt his child. He wrote a letter to the juvenile court acknowledging paternity. He enrolled in the Cherokee Nation and submitted a copy of his Nation membership card to the court. The Nation acknowledged that Jared was a member of the tribe, and that J., as his biological child, was eligible for enrollment. Finally, Jared complied with the court's April 2007 orders and submitted to a DNA test, which confirmed that he was J.'s father. Consequently, we find that Jared acknowledged paternity.

¶ 25 Because Jared acknowledged paternity and was a member of the Cherokee Nation, we find that J. is an Indian child. Accordingly, the juvenile court was required to follow ICWA's provisions before finalizing the adoption. Ariz. R.P. Juv. Ct. 84(c)(6). Specifically, Arizona Rule of Procedure for the Juvenile Court 84(c)(6) required the court to determine whether:

a. The tribe was notified of the proceedings and the rights to intervene, if applicable;

b. The parent['s] ... consent to the adoption was taken in accordance with the Indian Child Welfare Act;

c. The placement complies with the preferences set forth in Section 1915 of the Act or whether good cause exists for deviation from the placement preferences; and

d. The parental rights of the parent ... have been terminated. The court shall enter an order terminating parental rights, based upon evidence beyond a reasonable doubt, including testimony of a qualified expert witness, that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child and that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proven unsuccessful. This finding shall be in addition to findings made, beyond a reasonable doubt, that the petitioner has met the burden of proving grounds upon which to terminate parental rights.

*See also Valerie M. v. Ariz. Dep't Econ. Sec.*, No. CV-08-0252-PR (Ariz.S.Ct. January 12, 2009) (discussing the requisite burdens of proof in an ICWA termination proceeding).

¶ 26 The record demonstrates that the juvenile court was notified that J. was an Indian child on August 24, 2007, and that the Nation intended to intervene on September 6, 2007. Moreover, Mother recognized that ICWA was applicable because she provided an additional adoption consent form to comply with ICWA requirements. The court recognized that ICWA was applicable because it took Mother's ICWA consent, allowed the Nation to intervene and ensured that the Nation approved of the child's placement with the adoptive parents.

¶ 27 Although Jared failed to comply formally with A.R.S. § 8–106, the juvenile court had not resolved his parental status before it became aware that he had enrolled in the Nation, and that J. was an Indian child. The juvenile court, as a result, was required to recognize the applicability of ICWA and Rule 84(c)(6). The court should not have found that Jared's acknowledgement was too late to invoke ICWA as we found in *Juvenile Action*

*No. A–25525,* 136 Ariz. at 532, 667 P.2d at 232. Thus, the juvenile court erred as a matter of law by not recognizing that J. was an Indian child after August 2007 and following ICWA's provisions and Rule 84(c)(6) in subsequent proceedings.

### III

¶ 28 Having resolved the penultimate issue of whether the juvenile court was required to follow the procedural protections of ICWA once it was advised that the child was an Indian child, we turn to whether Jared was required to file an appeal after the juvenile court determined that he had not proven paternity pursuant to state law.

¶ 29 The January 2008 order held that Jared had not established paternity and, as a result, "lost his right to participate in the adoption." The order was not a final order. "A final order is one which ends the proceedings, leaving no question open for further judicial action." *Pima County Juvenile Action S–933,* 135 Ariz. 278, 280, 660 P.2d 1205, 1207 (1982) (citing *Eaton v. Unified Sch. Dist. No. 1 of Pima County,* 122 Ariz. 391, 595 P.2d 183 (App.1979), *opinion approved and adopted,* 122 Ariz. 377, 595 P.2d 169 (1979)). In an adoption, the entry of a decree of adoption completely severs the rights of "the persons who were the child's parents before entry of the decree." A.R.S. § 8–117(B) (2007). The entry of the decree is the final order. *Juvenile Action No. A–26961,* 135 Ariz. at 231, 660 P.2d at 482.

¶ 30 The adoptive parents equate the juvenile court's determination under A.R.S. § 8–106 to an order terminating parental rights pursuant to A.R.S. § 8–533 (Supp.2008). While an order or judgment terminating parental rights in a separate proceeding is a final order, *see Garza,* 128 Ariz. at 10, 623 P.2d at 369, Jared's rights have not been terminated pursuant to A.R.S. § 8–533(B)(5). Instead, the court found that A.R.S. § 8–106 was a self executing provision and Jared lost the right to demonstrate that he was J.'s father when he did not serve the Mother

with his paternity action within thirty days after he was served with the notice to potential fathers. Even if the juvenile court is correct, and it is not in this case because of ICWA, the determination is not final until the decree of adoption is entered. Consequently, the court's January 2008 order was not a final order. Jared filed a timely appeal from the final order, the decree of adoption, and, as a result, we have jurisdiction.[2]

### CONCLUSION

¶ 31 Based on the foregoing, we vacate the January 2008 order and the subsequent adoption order. We remand this matter to the juvenile court for further proceedings consistent with this opinion.

CONCURRING: JON W. THOMPSON, and PETER B. SWANN, Judges.

2. Jared also challenged the Arizona and Texas courts' decision to allow Arizona to assert UCCJEA jurisdiction. Because the child was in Arizona, our juvenile court made the first custody determination and Texas relinquished jurisdiction, we find no abuse of discretion. *See Melgar v. Campo,* 215 Ariz. 605, 609, ¶ 18, 161 P.3d 1269, 1273 (App.2007).