IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RICHARD M., *Appellant*,

*v.*

PATRICK M., JULIE M., M.M., *Appellees*.

No. 1 CA-JV 19-0288
FILED 4-2-2020

Appeal from the Superior Court in Maricopa County
No. JS519280
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Stuart & Blackwell, PLLC, Chandler
By Kristy B. Blackwell, Cory A. Stuart
*Counsel for Appellees Patrick M. and Julie M.*

---

**OPINION**

---

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

**¶1**        Richard M. is a potential and putative father who appeals the court's order terminating his parental rights to minor child M.M. Richard M. argues the court erred and denied him due process when it prohibited him from participating in the best-interests portion of the termination hearing. Because Richard M. failed to initiate paternity proceedings within thirty days of receiving notice of a planned adoption pursuant to Arizona Revised Statutes ("A.R.S.") section 8-106(G), we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        During her pregnancy, Lindsay G. ("Mother") identified Richard M. as the potential father of her unborn baby. On February 20, 2019, a notice pursuant to A.R.S. § 8-106(G) was served on Richard M. informing him that an adoption was planned and if he wished to intervene, he was required to initiate paternity proceedings and serve Mother within thirty days of receiving the notice. Richard M. did not do so.

**¶3**        On May 1, 2019, Mother gave birth to M.M. The following day, Mother placed M.M. in the care and control of the prospective adoptive parents, Patrick M. and Julie M. (collectively "Appellees"). A few days later, Mother gave Appellees written consent to adopt M.M., relinquishing her parental rights. Mother also waived her rights to notice and appear at all future proceedings concerning M.M.'s adoption.

**¶4**        Hoping to adopt M.M. in the State of Washington, where they lived, but recognizing Arizona was M.M.'s home state, Appellees petitioned the Maricopa County Superior Court for termination of Richard M.'s potential parental rights.[1] The petition alleged Richard M. failed to file

---

[1]        In this out-of-state adoption the State of Washington required Appellees to obtain a court order formally terminating any parental relationships. Accordingly, the court terminated Mother's parental

a paternity action within thirty days of being served with notice of the adoption, a ground for termination pursuant to A.R.S. § 8-533(B)(5).

¶5        The court scheduled a hearing on the petition and appointed counsel for Richard M.  In the meantime, Appellees filed a motion for summary judgment.  In response to the motion.  Richard M. admitted that he was served with a potential father's notice on February 20, 2019, and that, although he registered with the putative father's registry, he did not file a paternity action within the thirty-day deadline.  Accordingly, the court granted summary judgment in favor of Appellees as to the statutory ground for termination and set a hearing to determine whether termination of the potential parent-child relationship was in M.M.'s best interests.

¶6        Richard M. appeared at the time set for the final portion of the termination hearing and asked to participate.  Appellees objected, asserting that although Richard M. received notice of the hearing through his appointed counsel, he had no right to appear at the hearing because he had failed to file a paternity action.  Richard M. argued that neither A.R.S. § 8-106(J) nor A.R.S. § 8-535(H) explicitly deny him the right to be heard.  The court allowed Richard M. to remain in the courtroom but prohibited him from participating by testifying or offering evidence.

¶7        After hearing testimony from Appellees, the court terminated Richard M.'s parental rights and relinquished jurisdiction over the adoption proceedings to the State of Washington to finalize the adoption.  Richard M. timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

I.    Standard of Review

¶8        To terminate a parent-child relationship, the court must find, by clear and convincing evidence, at least one of the statutory grounds set forth in A.R.S. § 8-533(B), and by a preponderance of the evidence that termination is in the child's best interests.  A.R.S. § 8-533(B); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  Failure to file a paternity action within thirty days of being served with a notice of a

---

relationship pursuant to A.R.S. § 8-533(B)(7) and all other potential fathers' relationships pursuant to A.R.S. § 8-533(B)(6).  The termination of these relationships is not at issue on appeal.

planned adoption pursuant to A.R.S. § 8-106(G) constitutes a ground for termination of a potential father's parental rights.  A.R.S § 8-533(B)(5).

¶9            Richard M. does not challenge the court's termination order issued pursuant to A.R.S. § 8-533(B)(5) on the basis of his failure to file a paternity action, and he does not challenge the court's best-interests findings.  Instead, Richard M. first argues that the court erred in denying him the opportunity to participate because although A.R.S. §§ 8-535(H) and 8-106(J) operate to waive his right to notice, they do not preclude his right to participate.  Second, Richard M. argues although the statutes make it clear that he was not entitled to notice of the termination proceedings, fundamental due process protections afforded to parents required he, as a potential father, be allowed to participate and be heard in the same.  We review these issues *de novo* because they present questions of law.  *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 8 (2016).  We first turn to Richard M.'s statutory argument, then address whether Richard M. was afforded due process.

II.      Right to Be Heard at the Termination Hearing

¶10           In interpreting statutes, we strive to give effect to the legislature's intent.  *State v. Garcia*, 219 Ariz. 104, 106, ¶ 6 (App. 2008).  When the statute is clear and unambiguous, we apply its plain language and do not engage in any other means of statutory interpretation.  *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 66 (1999).

¶11           "[P]arties," in the context of the termination statute, "includes the child, the petitioners and any parent of the child required to consent to the adoption pursuant to § 8-106."  A.R.S. § 8-531(12).  A potential or putative father who does not commence proceedings to establish paternity within thirty days of receiving notice of the intended adoption of his child is not required to consent to the adoption.  A.R.S. § 8-106(J).  Therefore, a potential or putative father, without more, is not a party to a termination proceeding.

¶12           Section 8-106.01(G) also provides, in part, that:

> A putative father who fails to file a paternity action . . . within thirty days of completion of service of the notice prescribed in § 8-106 *is barred from bringing or maintaining any action to assert any interest in the child*.

A.R.S. § 8-106.01(G) (emphasis added).  Additionally, A.R.S. § 8-106(G)(7), although procedural in nature, also informs our understanding of a

potential father's rights when an adoption is intended. It provides the following:

> That the potential father's failure to file a paternity action pursuant to title 25, chapter 6, article 1, and to serve the mother and proceed to judgment in the paternity action as prescribed by this section, *bars the potential father from bringing or maintaining any action to assert any interest in the child*.

A.R.S. § 8-106(G)(7) (emphasis added).[2]

**¶13**        The adoption statutes are unambiguous in providing that the consequence of a potential father's failure to timely file a paternity action acts as a total bar to asserting any interest in the child. Richard M. admitted he failed to file a paternity action within thirty days of receiving service of the notice of the planned adoption. Also, a review of the termination hearing transcript makes it clear that Richard M.'s goal in attempting to participate in the termination hearing was to oppose termination of any parental rights to which he may have otherwise been entitled. For example, at the commencement of the hearing he announced his presence as, "[Richard M.], willing and capable father." He blamed Mother for his failure to file a paternity action within thirty days of service of the potential father's notice and proffered that he was prepared to provide a home, as well as financial and emotional support to M.M. In short, Richard M. sought to participate in the hearing for one reason only: to assert an interest in M.M. This was an action expressly barred by the clear language of A.R.S. §§ 8-106(G)(7) and 8-106.01(G), and the court correctly denied his request to be heard at or otherwise participate in the best-interests portion of the termination hearing.

III.    Due Process for Potential Fathers

**¶14**        Richard M. also argues due process required that he be allowed to participate in the hearing. We disagree.

**¶15**        "A court may order severance of parental rights under certain circumstances, so long as the parents whose rights are to be severed are provided with 'fundamentally fair procedures' that satisfy due process requirements." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citation omitted). "The process due in a particular case depends on three factors: '[f]irst, the private interest that will be affected by the official action; second,

---

[2]        The notice served on Richard M., at paragraph 8, specifically warned him of the consequence of failing to comply with the statutory process.

the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gallarzo v. Ariz. Dep't of Econ. Sec.*, 245 Ariz. 318, 321, ¶ 10 (App. 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 90, ¶ 25 (2019) (applying *Mathews* three-factor test in termination case).

### A. A Potential Father's Interest

**¶16**         "A potential father is a man, identified by the mother in an affidavit, who is or could be the father of the child, but whose paternity has not been established."[3] *David C.*, 240 Ariz. at 56, ¶ 14. Potential fathers have statutory rights to receive notice of a planned adoption, to timely initiate paternity proceedings, and, if paternity is established, to consent or withhold consent to the adoption, and to seek custody of the child intended to be adopted. *See* A.R.S. § 8-106(G); *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The private interest . . . of a man in the children he has [engendered] warrants deference and, absent a powerful countervailing interest, [legal] protection."). The termination of a parent's relationship with his child implicates a fundamental liberty interest; however, a potential father whose parentage has not been judicially established does not possess the same fundamental liberty interest as a legal parent unless and until he timely complies with the statutorily mandated paternity process. *See Jared P. v. Glade T.*, 221 Ariz. 21, 24, ¶ 15 (App. 2009); *see also Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 94 (1994) ("[A]n unwed father's parental rights do not attain fundamental constitutional status unless he takes significant steps to create a parental relationship."). Richard M. did not comply with that statutorily mandated paternity process, meaning his interests are as a putative and potential father, not the more expansive rights of an actual father.

### B. Risk of Erroneous Deprivation of the Interest

**¶17**         Notice of adoption proceedings affords potential fathers the opportunity to assert their right to parent. For this reason, A.R.S. § 8-106(F) requires that mothers file with the court a notarized affidavit identifying

---

[3]         "A putative father is a man who is or claims to be the father of the child and whose paternity has not been established." *David C.*, 240 Ariz. at 56-57, ¶ 17. Given the facts of this case, Richard M. is both a putative and potential father.

each potential father of the child to be placed for adoption. Those men identified by the mother are to be served with notice of the proceedings and specifically advised of the steps they must take to avoid forfeiture of any potential interest in the child to be adopted. A.R.S. § 8-106(G). Additionally, before the court finalizes an adoption, the petitioner is required to file with the court a certificate from the Department of Health Services stating "that a diligent search has been made of the registry of notices of claims of paternity from putative fathers." A.R.S. § 8-106.01(H). In short, Arizona's putative fathers registry (A.R.S. § 8-106.01), termination statutes (A.R.S. §§ 8-533, -535), and adoption statutes (A.R.S. § 8-106) provide potential and putative fathers a process to protect their interest once they learn of the pregnancy, and to receive explicit notice of the intended adoption procedures, the proceedings available to establish their paternity, and the actions they must take to preserve their interest.

### C. Government's Interest

¶18 The State's interests in ensuring the child has a permanent home when a potential father fails to timely protect his interest are significant. This court has "reasoned that prompt finality that protects the child's interest in a stable, permanent placement—either with a biological parent or an adoptive parent—is paramount." *Frank R. v. Mother Goose Adoptions*, 243 Ariz. 111, 115, ¶ 22 (2017) (citing *S-114487*, 179 Ariz. at 97); *see David C.*, 240 Ariz. at 57, ¶ 19 (stating that the statutes "provide relatively short time frames for the potential father to act to protect his rights, recognizing that children require permanent, stable homes"). The Arizona Supreme Court has also recognized that "[t]he law favors rapid placement so that the child can bond with those who will be the legal parents and not with those from whom the child may be taken. This sound policy benefits the child, the natural parents, the prospective adoptive parents, and society." *Frank R.*, 243 Ariz. at 115, ¶ 22 (quoting *S-114487*, 179 Ariz. at 97).

### D. Richard M. Was Afforded Due Process

¶19 Richard M. argues that in order to protect his fundamental right to parent, in addition to the previously mentioned safeguards, due process required the court to allow him to present evidence and be heard at the best-interests stage of the termination proceeding even though he had failed to comply with the statutory requirement to seek to establish paternity. More specifically, Richard M. argues the court should have allowed him to be heard after the court has found by clear and convincing evidence grounds for terminating any putative or potential rights Richard

M. may have had because he failed to protect his statutory rights by timely filing a paternity action.

¶20 A potential father must "take affirmative steps to establish paternity if he wishes to preserve his parental rights." *Jared P.*, 221 Ariz. at 24, ¶ 15. The Arizona Supreme Court recognizes that "the purpose of the putative fathers registry is to provide the father with an opportunity to claim his parental rights . . . ." *Frank R.*, 243 Ariz. at 116, ¶ 23. Potential fathers waive their rights by inaction. *David C.*, 240 Ariz. at 57, ¶¶ 19-21. As a potential father, Richard M. had the right to receive notice of the adoption proceedings and to establish his paternity such that he may intervene in the termination and adoption proceedings. *See* A.R.S. § 8-106(G), (J).

¶21 Registration with the registry was but the first step Richard M. needed to take to establish his parental rights. He took this first step. However, as a potential father, Richard M. also was required to "initiate paternity proceedings under title 25, serve the mother within thirty days of completion of service, and proceed to judgment in the paternity action." *Jared P.*, 221 Ariz. at 24, ¶ 15 (internal quotation marks omitted) (quoting A.R.S. § 8-106(G)(3), (4)). Had he done so, Richard M. would have had the right to withhold consent to the adoption and to object to and participate in the termination of his legally established parental rights. *See* A.R.S. § 8-106(A)(2)(c), (G). Richard M. claims his failure to file a paternity action was the result of his reliance on Mother's assertion that she did not intend to go forward with the adoption and that the two "were going to work things out." However, he cites no legal authority for the proposition that his reliance on Mother's statements would constitute excusable neglect on his part. Therefore, if he relied on Mother's statements that she did not intend to consent to M.M.'s adoption in the face of evidence to the contrary, he did so at his own peril.

¶22 Arizona's putative fathers registry and the procedures provided by the paternity statutes afforded Richard M. the opportunity to receive notice of any termination proceeding against him, to establish his paternity over M.M., and—with the assistance of counsel—to have the right to oppose termination of his parental rights and adoption of M.M. Therefore, Richard M.'s claim of a due process violation must fail.

IV. Best-Interests Determination

¶23 As the trier of fact, the court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and

resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). The court determined termination of any parental right Richard M. may have asserted was in M.M.'s best interests and Richard M. does not challenge that finding of fact. Our independent review of the record reveals no abuse of discretion in the court's best-interests determination.

## CONCLUSION

**¶24**        We affirm the termination of Richard M.'s potential parental rights to M.M.

