NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

## IN RE TERMINATION OF PARENTAL RIGHTS AS TO I.N. AND N.N.

No. 1 CA-JV 24-0066

FILED 04-15-2025

---

Appeal from the Superior Court in Maricopa County
No. JD15529
JS21899
The Honorable Suzanne Scheiner Marwil, Judge

**AFFIRMED IN PART; DISMISSED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant Darius N.*

Arizona Attorney General's Office, Phoenix
By Amber Pershon
*Counsel for Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Chief Judge David B. Gass joined.

---

**F U R U Y A**, Judge:

**¶1**　　　　Darius N. ("Father") appeals the juvenile court's order terminating his parental rights to his children, I.N. and N.N. For the following reasons, we dismiss in part, affirm in part, and vacate and remand in part.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　　During Father's years-long relationship with Ashley B. ("Mother")[1], they were never married. However, the couple had two children together during that time. Mother's three minor children from previous relationships also lived with them. Father is the proven biological father of the couple's older child, I.N., and although not established, he does not dispute his paternity to the youngest child, N.N. Father has an extensive history of substance abuse and child neglect that culminated in these proceedings.

**¶3**　　　　In September 2020, before N.N.'s birth, the Department of Child Services ("DCS") placed I.N. in a dependency for the first time after Father and Mother were arrested for possession of methamphetamine, possession of an assault rifle, and child endangerment. The court dismissed this first dependency after the parents engaged in services and demonstrated sobriety.

**¶4**　　　　The following year, I.N.'s guardian ad litem filed a dependency petition citing concerns of drug abuse and domestic violence. The resulting investigation by DCS prompted Mother to disenroll her older children from school to avoid DCS questioning, limiting the investigation's effectiveness and leading to the petition's dismissal. In September 2022, Father was shot during a drug deal while I.N. was present and asleep beside

---

[1]　　　　Though she is not a party to this appeal, Mother's parental rights were also terminated.

Father's handgun. The police discovered fentanyl pills all over the floor and other drug paraphernalia throughout the home. But once again, the parents evaded DCS and law enforcement's efforts to locate them.

¶5 Weeks after the shooting, Mother gave birth to N.N. at home. Information that DCS gathered through its later investigations suggested N.N. was born substance-exposed and may have suffered withdrawals, though there is no record N.N. was provided with medical care. Mother's older children reported acting as I.N. and N.N.'s primary caregivers while the parents used and dealt drugs. They witnessed domestic violence. Drugs and drug paraphernalia surrounded them in the home and I.N. was burned by the parents' drug equipment multiple times.

¶6 Soon after N.N.'s birth, an extended family member informed police of the family's location. Mother and Father were arrested on outstanding warrants, and DCS took the children into custody. In a DCS interview, the parents denied drug use but refused drug testing. After the investigation, DCS placed I.N. and N.N. with a foster family who later expressed a desire to adopt them. DCS also began dependency proceedings as to I.N. and N.N.

¶7 Neither parent contested the dependency, resulting in the court determining that both children were dependent. At that time, the court ordered Father to receive paternity testing and noted that Father had signed an acknowledgment of paternity, which Mother did not contest. The court then set a reunification plan. As part of its reunification plan, DCS referred Father for substance abuse testing and treatment, but his referrals lapsed after he did not participate. Although Father did not test with DCS, he began methadone treatment in December 2022 through Community Medical Services ("CMS") to comply with his probation requirements. Five months into the dependency, he completed three drug tests with AverHealth, all of which returned positive for fentanyl. A few months later, the parents were evicted from their apartment. Thereafter, Father failed to verify his place of residency with DCS, though he claimed he was staying at a sober living facility.

¶8 The court held a contested termination trial over two days in February and March 2024. Father testified he completed treatment on his own, but did not submit any evidence of his sobriety or stable living conditions. He claims to have participated in monthly counseling as part of his methadone treatment at CMS but provided no records confirming this.

**¶9** Father testified that DCS failed to provide him with a paternity test for N.N. because it did not send his information to AverHealth. He stated that he visited the testing center three times, but each time, AverHealth claimed he was not in its system. He contacted his case manager about the issue but said it was never resolved. However, his case manager testified that after Father notified her of the problem, she confirmed that his information was in AverHealth's system. As of the final date of trial, Father's paternity of N.N. had not been established by testing, though he had signed an acknowledgment of paternity.

**¶10** After taking the matter under advisement, the court ultimately found Father "remain[ed] in the midst of [his] addictions and [has] not demonstrated a prolonged period of sobriety." The court found the likely adoptive placements adequate to meet the special needs of each child. It further found DCS had proved by a preponderance of the evidence that the children's best interests necessitated terminating their biological parents' rights.

**¶11** The court terminated Father's parental rights to I.N. on the grounds of nine and fifteen months' out-of-home placement, and as to N.N., on the grounds of chronic substance abuse and failure to initiate paternity proceedings. Father timely appealed, and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 8-235(A), 12-120.21(A), -2101(A), and Arizona Rule of Procedure for the Juvenile Court 601(a).

## DISCUSSION

**¶12** Father argues the juvenile court erred in (1) issuing N.N.'s dependency order without establishing Father's paternity, (2) finding that Father had been unable to remedy the circumstances that caused out-of-home placement, and (3) finding that termination was in the best interests of the children.

**¶13** A parent's right to care, custody, and control of his child is fundamental but not absolute. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 476 ¶ 18 (2023). A court may terminate parental rights if it finds, by clear and convincing evidence, the existence of at least one of the statutory grounds under A.R.S. § 8-533(B) and, by a preponderance of the evidence, that termination is in the child's best interests. *Id.* at 477 ¶ 20. We view the facts in the light most favorable to upholding the court's findings. *Id.* at 479 ¶ 32.

## I. We Lack Jurisdiction to Address Father's Appeal of N.N.'s Dependency Order.

**¶14**         "Generally, a party must file a notice of appeal within thirty days of the entry of an appealable order pursuant to Arizona Rule of Civil Appellate Procedure ("ARCAP") 9." *Dowling v. Stapley*, 221 Ariz. 251, 264 ¶ 39 (App. 2009). "[A] dependency disposition order is a final, separately appealable order." *Lindsey M. v. Arizona Dep't of Econ. Sec.*, 212 Ariz. 43, 46 ¶ 12 (App. 2006).

**¶15**         Here, the dependency order in question was entered on January 23, 2023. But Father did not contest the dependency petition's allegations and did not timely appeal the resulting dependency order. Therefore, we lack jurisdiction to address his arguments regarding the dependency order and dismiss Father's untimely appeal thereof accordingly.

## II. DCS Failed to Establish Father's Paternity or to Provide Father with a Notice Compliant with A.R.S. § 8-106(G).

**¶16**         "The parent's interest in the parent-child relationship may not be changed without due process and compliance with the statutes involved." *Matter of Appeal in Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994) (cleaned up). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id.*

**¶17**         The court found termination was proper as between N.N. and Father on grounds of prolonged and chronic substance abuse per A.R.S. § 8-533(B)(3) and Father's failure to file a paternity action per A.R.S. § 8-533(B)(5). But neither ground is availing on this record.

**¶18**         First, to establish termination under the prolonged and chronic substance abuse grounds, the court must determine, by clear and convincing evidence, "[t]hat the *parent* is unable to discharge parental responsibility because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3) (emphasis added). For purposes of this statute, a "parent" is defined as "the natural or adoptive mother or father of a child." A.R.S. § 8-531(10).

**¶19**　　　　Here, Father's paternity was not established at the time of trial. Thus, the court could not find that Father was a "parent," whose rights to N.N. could be terminated under A.R.S. § 8-533(B)(3) and its findings to that effect were in error.

**¶20**　　　　Second, to establish termination on grounds of failure to timely file a paternity action, the court must find that "the potential father failed to file a paternity action within thirty days of completion of service of notice as prescribed in § 8-106, subsection G." A.R.S. § 8-533(B)(5). The statutory notice provided in termination proceedings affords potential fathers the opportunity to assert their right to parent. *Richard M. v. Patrick M.*, 248 Ariz. 492, 497 ¶ 19 (App. 2020). Potential fathers identified by the mother must be served notice of termination proceedings and specifically advised of the steps they must take to avoid forfeiture of any potential interest in their right to parent the child. *Id.*; A.R.S. §§ 8-533(B)(5), -106(G).

**¶21**　　　　Here, the court found that Father had been served sufficient notice to terminate his parental rights under A.R.S. § 8-533(B)(5). However, notwithstanding this finding, DCS concedes on appeal that, at the time of the termination hearing, it had failed to serve Father with the required notice. Father had the right to be properly served with a notice of the termination proceedings, in a form required by statute. A.R.S. § 8-106(G), (I); *Richard M.*, 248 Ariz. at 498 ¶ 19.

**¶22**　　　　Because DCS concedes that Father was not served a compliant notice as required by the statute, we vacate the termination order regarding N.N. and remand the case to the court for further proceedings as to N.N.

**III.　Termination of Father's Parental Rights to I.N. Was Not Clearly Erroneous.**

**¶23**　　　　The court may terminate the parent-child relationship if the moving party proves at least one of the statutory grounds set forth in A.R.S. § 8-533(B) by clear and convincing evidence. *Brionna J.*, 255 Ariz. at 474 ¶ 1; A.R.S. § 8-537(B). We accept the court's factual findings so long as reasonable evidence and inferences support them, and we affirm the court's legal conclusions about the statutory grounds for termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31. We do not reweigh the evidence. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 8 (App. 2022).

**¶24**　　　　After fifteen-months' time-in-care, DCS may prove to the court that the parent is unable to remedy the circumstance leading to the out-of-home placement and petition for termination of parental rights.

A.R.S. § 8-533(B)(8)(c). Father argues the court erred by terminating his parental rights because DCS failed to prove by clear and convincing evidence his inability to remedy the circumstances that originally led to the out-of-home placement. *See id.*

¶25 As the trier of fact, "the juvenile court is in the best position to weigh evidence and assess witness credibility," therefore, "we accept the juvenile court's findings of fact if reasonable evidence and inferences support them." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3 ¶ 9 (2016). The record establishes that, while Father participated in some treatment, his actions limited both his access to services and DCS' ability to evaluate his progress.

¶26 The court noted that, despite persistent requests and court orders, Father did not undergo drug testing for DCS during the 17 months the dependency was open. Father claims he recovered from his addictions via his participation in methadone treatment. However, of the three drug tests he did submit to the court, all were positive for fentanyl, two were positive for cannabinoids, and only one was positive for methadone. Additionally, Father testified that he used fentanyl for 12 out of the 17 months of the dependency and relapsed three months before trial.

¶27 We conclude that sufficient evidence supports the court's determination that Father failed to remedy the circumstances that led to I.N.'s out-of-home placement. Because we affirm on the statutory ground of fifteen-months' time-in-care, we need not consider Father's argument regarding the nine-months' time-in-care ground. *See* Ariz. R.P. Juv. Ct. 353(h); *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78 ¶ 5 (App. 2017).

**IV.    The Court Did Not Err in Finding Termination is in I.N.'s Best Interests.**

¶28 When considering the child's best interests, the court must consider the totality of the circumstances, emphasizing the child's stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51 ¶¶ 12 13 (2018). The court must find that the child would benefit from terminating the parent's rights or would be harmed by continuing the parent-child relationship. *Id.* at 150 ¶ 13. We accept a court's best-interests findings "if reasonable evidence and inferences support them." *Brionna J.*, 255 Ariz. at 478 ¶ 30.

¶29 The best-interests requirement may be met if the petitioner proves that the child is adoptable. *Mary Lou C. v. Arizona Dep't of Econ. Sec.*,

207 Ariz. 43, 50 ¶ 19 (App. 2004). For the term "adoptable" to have meaning, it must be shown that the potential for adoption is likely, not just theoretically possible. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370–71 ¶ 22 (App. 2018). However, DCS does not need to show an adoption plan to show the child is adoptable. *Id.* at 370 ¶ 19 (internal citations omitted). The court may consider evidence that an existing placement meets the child's needs to determine that termination is in the child's best interests. *Mary Lou C.*, 204 Ariz. at 50 ¶ 19.

**¶30** Here, the court found that terminating Father's parental rights was in I.N.'s best interests because Father was "unwilling to interface with the Department to show sustained sobriety and stability." Additionally, I.N. requires specialized care, which she was receiving in her adoptive placement. She is on a waitlist for speech and occupational therapy and is undergoing testing to determine her need for physical and feeding therapy. Her foster parents also plan to enroll her in a developmental school to address her developmental concerns. This record shows the adoptive placement was meeting I.N.'s needs, including her special needs, and they desired to adopt her.

**¶31** The court considered Father's testimony about his love for his children and commitment to sobriety but ultimately determined that his record of substance abuse and neglect weighed in favor of termination. Here, the court considered the totality of the circumstances in its decision. *See Alma S.*, 245 Ariz. at 150–51 ¶¶ 12–13. Because reasonable evidence supports the court's best-interests finding for termination of Father's parental rights, we discern no error.

## CONCLUSION

**¶32** We dismiss Father's appeal of N.N.'s dependency order for lack of jurisdiction. We vacate N.N.'s termination order and remand to the juvenile court for further proceedings consistent with this decision. We affirm as to all remaining issues.

